■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v STANLEY KRYSTOF, JR., Respondent. — Appeal by the People from an order of the Supreme Court, Queens County (Leahy, J.), dated February 6, 1981, which, after a hearing, granted defendant's motion to suppress statements. Order reversed, on the law, and motion to suppress statements denied. On July 19, 1980 a complaint was received by the police from the victim of a chain snatching. The complainant gave the police the license number of the car in which the thief fled. Subsequently, Detective Mulvey contacted the owner of the car, Stanley Krystof, and was informed that the driver must have been Krystof's son (the defendant). Mulvey asked Krystof to have defendant contact him. The following day defendant's mother contacted Mulvey. The two agreed that defendant

would appear at the precinct. Mulvey told neither parent the subject of his call. When defendant appeared he was accompanied by his mother, escorted to an office and apprised of the robbery in question. Mulvey then asked defendant if he knew anything about the incident, whereupon defendant admitted that he had been present. Mulvey then asked what happened, and defendant told an exculpatory story. Mulvey informed him that if the story were true, he had nothing to worry about. Defendant agreed to find out the identity of the robber, whom he claimed was a friend but knew only by a nickname. The interview lasted 10 minutes and defendant left the precinct. On August 18, 1980 Mulvey learned that defendant's story was disputed by the complainant, whereupon Mulvey decided to arrest defendant and so informed the latter's mother. Defendant then called Mulvey and told him he had remembered where his friend sold the stolen chain. Mulvey, however, stopped him from saying more and the two made arrangements for defendant to come in to be arrested. While we agree that the investigation may have focused on defendant once he was linked as the driver of the car in question, that alone does not mandate the giving of *Miranda* warnings (see *People v Brosnan,* 31 AD2d 975). What *Miranda* warnings are intended to safeguard against are the abuses of custodial interrogation, i.e., questioning initiated by the law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way (see *Miranda v Arizona,* 384 US 436, 443, 444). The test for determining whether a custodial situation exists is "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" *(People v Yukl,* 25 NY2d 585, 589, cert den 400 US 851). The facts before us belie any finding of deprivation of freedom of action. While it is true that defendant was questioned in the unfamiliar surroundings of the precinct, his presence there was voluntary (he was not arrested); he was not isolated (his mother was present throughout); the interview was short (10 minutes); the mode of questioning uncoercive (e.g., a simple inquiry as to whether defendant knew anything about the incident); and, at the end, defendant was as free to leave as he had come. Mangano, J.P., O'Connor, Weinstein and Bracken, JJ., concur.